## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF NEW YORK

_____

JOHN TOMLINSON, AND
JOANNA TOMLINSON,


                    Plaintiffs,

          vs.


ONONDAGA COUNTY,
ONONDAGA COUNTY SHERIFF'S
OFFICE, SHERIFF TOBIAS SHELLEY, *in
his individual capacity*, DEPUTY SHERIFF
NICHOLAS LOSTUMBO, *in his individual
capacity*, DEPUTY SHERIFF KEVIN
GREENWOOD, *in his individual capacity,*
AND DOE OFFICERS 1-10


                    Defendants.

**CLAIM-COMPLAINT FOR DAMAGES**
Case No.: 5:25-CV-0326 (DNH/MJK)

**A. FEDERAL CLAIMS**

1. **VIOLATION OF CIVIL RIGHTS
   EXCESSIVE FORCE (42 U.S.C. §
   1983);**
2. **MUNICIPAL LIABILITY
   AGAINST ONONDAGA
   COUNTY 42 U.S.C. § 1983;**
3. **ASSAULT and BATTERY 42
   U.S.C. § 1983;**
4. **FALSE ARREST 42 U.S.C. § 1983;**
5. **FALSE IMPRISONMENT 42
   U.S.C. § 1983;**
6. **FIRST AMENDMENT
   RETALIATION 42 U.S.C. § 1983);**
7. **FABRICATION OF
   EVIDENCE 42 U.S.C. § 1983;**
8. **FAILURE TO INTERCEDE 42
   U.S.C. § 1983;**

**B. STATE CLAIMS**

9. **FALSE IMPRISONMENT;**
10. **NEGLIGENT INFLICTION OF
    EMOTIONAL DISTRESS;**
11. **INTENTIONAL INFLICTION OF
    EMOTIONAL DISTRESS;**
12. **NEGLIGENT TRAINING,
    DISCIPLINE, RETENTION, AND
    SUPERVISION;**
13. **LOSS OF CONSORTIUM**


**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1. This is a complaint for Civil Rights violations, including claims for excessive force, assault, battery and false arrest of Plaintiff, John Tomlinson and for Intentional and Negligent Infliction of Emotional Distress and Loss of Consortium for his wife, Mrs. Joanna Tomlinson.

2. Plaintiffs, John Tomlinson and Joanna Tomlinson, by their attorney, Jesse P. Ryder, allege as their Complaint for Damages and Civil Rights violations the following facts, and facts upon information and belief.

## II. PARTIES

3. Plaintiffs, John Tomlinson and Joanna Tomlinson, are citizens of the United States and residents of Auburn, Cayuga County, and State of New York.

4. Defendant Tobias Shelley is a "Person" officers employed by Defendant Onondaga County Sheriff's Office.

5. Defendant Nicholas Lostumbo is a "Person" employed by Defendant Onondaga County Sheriff's Office as a Sheriff's Deputy.

6. Defendant Kevin Greenwood is a "Person" employed by Defendant Onondaga County Sheriff's Office as a Sheriff's Deputy.

7. Defendant Onondaga County Sheriff's Office is a division of Onondaga County, a governmental organization of the State of New York.

8. Defendant Onondaga County is a governmental organization of the State of New York.

## III. DOE DEFENDANTS

9. Plaintiffs do not know the true names and capacities, whether individual, corporate, associate, or otherwise of Defendant Does 1 through 10 inclusive, and therefore sue these

Defendants by such fictitious names.  Plaintiffs will amend their complaint to allege their true names and capacities when this has been ascertained.

## IV. RESPONDEAT SUPERIOR

### Respondeat Superior

10. John Tomlinson and Joanna Tomlinson claim that the County of Onondaga is liable under the theory of respondeat superior for Defendant Police Officers Nicholas Lostumbo and Kevin Greenwood's assault, battery, false imprisonment, false arrest, violations of John Tomlinson's state and federal Constitutional rights and other violations of Plaintiff's rights. Municipalities may be held vicariously liable for state law torts committed by police officers under a theory of respondeat superior. Therefore, the respondeat superior claim against the County of Onondaga regarding Defendant Police Officers Lostombo and Greenwood is a valid claim, establishing liability against the County of Onondaga.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

### Notice of Claim (GML 50-E)

11. Plaintiffs have complied with all conditions precedent, including filing of a Notice of Claim under General Municipal Law § 50-e, which only applies to State Law Causes of Action; these requirements are not applicable to Plaintiffs' Federal Claims asserted pursuant to 42. U.S.C. §1983 ["[A]; notice of claim is not a condition precedent to a cause of action, asserted pursuant to 42 USC § 1983, which seeks to recover damages premised on violations of federal civil or constitutional rights under color of state law"][1]

---

[1] *Felder v Casey*, 487 U.S. 131; *Rowe v NYCPD,* 85 AD3d 1001, 1002 [2d Dept 2011]

## VI. JURISDICTION

12. This Court has jurisdiction over this lawsuit because the suit arises under 42 U.S.C. § 1983 and asserts facts showing that Defendants, and each of them, acted willfully, deliberately and pursuant to a policy, custom and practice, and with reckless disregard of Mr. and Mrs. Tomlinson's established Federal and State Constitutional rights.

## VII. VENUE

13. Venue is proper in this district under 28 U.S.C. § 1391 (b) (1) because Defendants reside in this district and Plaintiffs reside in Cayuga County. Venue is also proper in this district under 28 U.S.C§1391 (b) (2) because the events, acts and omissions giving rise to this claim occurred in this district.

## VIII. STATEMENT OF FACTS

14. In the early evening of June 28, 2024, John Tomlinson ("John"), a retired corrections officer and special deputy Schuyler County Sheriff, took his family to the Onondaga County Amphitheater to celebrate the completion of his daughter's first round of chemotherapy. John, his wife Joanna, his daughters Sarah and Alexandra and their fiancés chose to celebrate this somber milestone together by attending a Willie Nelson concert held on that evening at the Amphitheater.

15. As they approached the security gate, John noticed that multiple Onondaga County Sheriff's Deputies had a man on the ground on the other side of the gate and the man appeared to be having trouble breathing. As the Tomlinson family cleared through the security gate they were ushered around the apparent arrest and continued as a group towards the ticketing gate.

16. As John was walking towards the ticketing gate, he noticed two young Sheriff's Deputies hustling towards the arrest incident that they had just witnessed behind them and which was still apparently in progress. Out of concern for the perception of his fellow law enforcement

officers and the safety of the citizen who was being arrested, John mentioned to Deputy Lostumbo who passed closely by on his way to the scene of arrest that the arrestee looked as if he was having trouble breathing. Thinking nothing more of the incident, John, along with his family, continued walking toward the ticketing gate when John heard a voice bellowing from behind him scream "shut your fucking mouth!"

17. Stunned by what they just heard, the Tomlinson family stopped and each turned their heads to see who was screaming this profanity in their direction. At the very moment John turned his head, Deputy Lostumbo struck John in the face with such an excessive amount of force that he was knocked into a semi-conscious state. Out of fear for her father's safety, John's daughter attempted to step between the Deputy Lostumbo and her father, but she was easily brushed aside as both Deputy Lostumbo and Deputy Greenwood tackled John to the asphalt.

18. In regaining full consciousness, John found himself on the asphalt with  Deputy Lostumbo and Deputy Greenwood delivering a barrage of blows that subsequently resulted in multiple broken ribs.

19. In order to cover up their extreme and unreasonable use of force upon John, Deputies Lostumbo (as arresting officer) and Greenwood then charged John with disorderly conduct, a violation of Penal Law § 240.20.

20. After an extended period of wherein Sheriff Shelley, along with his deputies attempted to coerce John into confessing that his conduct constituted a criminal offense, John was eventually transported to the hospital with chest pains, concussion syndrome, multiple abrasions and bruises and multiple broken ribs.

21. Deputy Lostumbo's retaliatory attack on John for exercising his constitutional right to voice his concerns to law enforcement is in direct violation of the United State Constitution and the Onondaga County Sheriff's Department Subject Management Policy. Specifically, the use of empty hand-hard strikes and forced grounding without justification. At no time were Deputies Lostumbo, Greenwood, and Does 1-10 placed in a position where they could reasonably believe that they were managing resistance, or either protecting themselves or the public from John Tomlinson.

22. John Tomlinson has enjoyed a long and successful career in law enforcement and has received innumerable awards and commendations. Due to the patently unconstitutionally infirm conduct of the Onondaga County Sheriff Deputies and their supervisors, John and his family have lost faith in his once beloved profession as a law enforcement officer. In recounting the trauma he experienced that day, John states: "the first thing my wife and I did when we got home from the hospital that night was to take down the thin-blue-line flag we have always flown from our porch."

23. In an attempt to cover up their conduct, the Deputies and Doe 1-10's police report fabricated the following depositions: "The defendant was yelling at me as he approached me, and did get so close that I needed to grab onto his shirt to prevent him from coming any closer and to protect myself. Furthermore, the defendant did put his hands towards my face in what appeared to be an attempt at him punching me. The defendant did appear to be highly intoxicated during this incident.  This Is a willfully perjured false statement.

24. Such fabrications wholly conflicted with the more truthful account that John Tomlinson had only mentioned to Deputy Lostombo that the man on the ground being arrested looked as if he was having trouble breathing. In response and in retaliation for John's protected speech as a citizen observing police activity in a public space, Deputies Lostombo, Greenwood, and Does 1-10 felt obliged to viciously assault John Tomlinson in front of his family causing him both severe physical and emotional damages, while inflicting severe emotional distress on Mrs. Tomlinson as upon their accompanying children. Deputies and Does 1-10 falsely and without probable cause, charged John Tomlinson with disorderly conduct, requiring him to defend such charges in the Town of Geddes Courthouse.

25. On November 14, 2024, the Geddes Town Court dismissed the charge of Disorderly Conduct against John Tomlinson due to being facially insufficient.

# IX. DAMAGES

26. John Tomlinson's damages include, but are not limited to, the following: brain damage, severe cervical sprain, whiplash, bruised and bloody wrists, broken ribs, concussion syndrome, anxiety, mental and emotional distress, humiliation, fear, and discomfort, loss of enjoyment of life, inconvenience and suffering, physical and psychic injuries, headaches, nightmares, insomnia, and misery. The injuries, illnesses and harms caused, and continue to cause, John Tomlinson to seek and obtain medical treatment and ongoing medical care for his injuries, illnesses and medical conditions, and to incur medical expenses, loss of wages, medical bills, loss of work benefits all caused by the Defendants, and each of them.

## A. FEDERAL LAW CLAIMS

### FIRST CAUSE OF ACTION
**Violation Of United States Civil Rights Laws**
**42 U.S.C. Sections 1983**
**Use of Excessive Force**
**(Against Deputies Lostumbo, Greenwood, Does 1-10)**
**As to John Tomlinson**

27. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

28. Federal Law 42. U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".

**Fourth Amendment Claim Excessive Force**

29. "The Fourth Amendment protects individuals from the government's use of excessive force while detaining or arresting individuals."[2] "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively reasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'"

30. Defendant Deputies Lostumbo, Greenwood, dand Does 1-10's use of unreasonable, unnecessary and excessive force violated Mr. Tomlinson's clearly established constitutional rights and was not objectively reasonable in light of the circumstances. Mr. Tomlinson was not a suspect for any crime and had not committed any crime. The Defendant Deputies Lostumbo, Greenwood, and Does 1-10 acted willfully, deliberately, maliciously and with reckless disregard for Mr. Tomlinson's established constitutional rights.[3]

31. As the true facts above prove, Deputies Lostumbo, Greenwood, and Does 1-10 inflicted objectively excessive and unreasonable force upon Mr. Tomlinson, including beating his face, head and body. There was never any threat of danger to either deputy, because at all times of the excessive force inflicted on Mr. Tomlinson, he was simply speaking to Deputy Lostumbo. Deputy Lostumbo, and Does 1-10 did not have cause to arrest Mr. Tomlinson. Neither officer had any probable cause to touch, hit, punch, strike, or seize Mr. Tomlinson. Any force against an American Citizen without probable cause is excessive and a constitutional violation. Even though Mr. Tomlinson is privileged to resist and defend himself against unreasonable force, he did not at any time do so.

32. At all times, Mr. Tomlinson was a law-abiding citizen, and was encased and enshrined in the protection of the United States Constitution. The Deputies engaged in unreasonable, excessive and illegal force:

---

[2] *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citing Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)).

[3] *Smith v Wade, 461 U.S. 30,45-48 (1983)*

33. As a direct and proximate result of the actions, Mr. Tomlinson has suffered brain damage, severe cervical sprain, whiplash, bruised and bloody wrists, broken ribs, concussion syndrome, as well as mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

34. As he the acts and/or omissions of Deputies Lostumbo, Greenwood and Does 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Mr. Tomlinson's safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof

    WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### SECOND CAUSE OF ACTION
**Municipal Liability**
**42 U.S.C. § 1983**
**(Against Defendants Onondaga County and**
**Onondaga County Sheriff's Office)**
**As to John Tomlinson and Joanna Tomlinson**

35. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

36. At the time of Mr. Tomlinson's arrest and vicious beating, Deputies Lostumbo, Greenwood, and Does 1-10 were acting under color of all the laws and regulations of the State of New York and the County of Onondaga. Onondaga County has a policy, custom, practice and pattern of conduct in place that enables it agents and sheriff department employees to act with deliberate indifference to the constitutional rights of individuals. This policy, custom, practice and pattern of conduct, includes, but is not limited to, tolerating misconduct by its deputy sheriffs, encouraging misconduct by failing to adequately supervise, discipline and train its deputies.

37. Plaintiffs assert that Onondaga County is liable for any constitutional torts committed by the individual Defendant Deputies and Does 1-10 on account of Onondaga County maintaining a custom, policy and pattern and practice of failing to exercise reasonable care

in training, supervising and hiring its deputies. Plaintiffs further allege Onondaga County maintains a custom, policy, pattern and practice of inaction regarding disciplining deputies for excess force; and a custom, policy, practice and pattern of failing to discipline their deputies for violating the constitutional rights of its citizens. Plaintiffs also allege that the Onondaga County Sheriff's Office has an inadequate Use of Force Policy, which does not clearly draw a bright line defining constitutional violations for excessive force such as punching citizens in the face, forcibly grounding them or violating their constitutional rights of free speech. The Onondaga County Sheriff's Office's policy, custom, practice and pattern were a motivating factor causing a deprivation of Mr. and Mrs. Tomlinson's constitutional rights.

38. The Onondaga County Sheriff's Office has an urgent need for a clear policy regarding excessive force and protecting the constitutional rights of citizens. Plaintiffs request a Declaratory Judgment that the Onondaga County Sheriff's Office policy on excessive force is inadequate and presents clear and present danger of deprivation of the constitutional rights of persons who have contact with their deputies.

39. Under *Monell*, local governments and their agencies can be sued as "persons" under § 1983 and may be liable where a government policy or custom gives rise to a constitutional deprivation. A "custom" does not require official sanction; instead, a custom "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."[4] Thus, the elements of a *Monell* claim include: 1) an official policy or custom that, 2) causes the plaintiff to be subjected to, 3) a deprivation of a constitutional right.[5]

40. An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a

---

[4] *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) To make a claim for municipal liability, it is not sufficient to allege merely conduct attributable to the municipality. Id. "A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.
[5] *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1987).

practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; and (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees.[6]

41. The record of this case, based on investigation, research, complaints to the Onondaga County Sheriff Office's Records, newspaper reports of claims of excessive force and false arrests of citizens by the Sheriff's Office shows a pattern, practice, custom and policy by in failing to respect, uphold and enforce the constitutional rights of the citizens of Onondaga County. Defendants' failure to discipline, train and supervise the deputies under their command has resulted in the assault and battery, false arrest and civil rights violations of Mr. and Mrs. Tomlinson, and many, many other law-abiding citizens of Onondaga County. Defendant's actions and inactions as the government official responsible for establishing municipal policies related to discipline, training and supervising the Onondaga County Sheriff's Office deputies have been the motivating factors in the deprivations of constitutional rights of Mr. and Mrs. Tomlinson and of many other victims of brutality and misconduct in Onondaga County.

42. Defendant Shelley's inactions, resulting in a policy of inaction, a policy of lack of supervision, and a policy of lack of training for his deputies in how to protect the constitutional rights of citizens was a direct and proximate cause of the violation of Mr. and Mrs. Tomlinson's Constitutional Rights as stated herein.

43. As a direct and proximate result of the actions, Mr. Tomlinson has suffered brain damage, severe cervical sprain, whiplash, bruised and bloody wrists, broken ribs, concussion syndrome, as well as mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

---

[6] *Dorsett-Felicelli v. C'nty of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing Monell, 436 U.S at 690, Pembaur v. VILLAGE of Cincinnati, 475 U.S. 469, 483-84 (1986), and *VILLAGE of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
### ASSAULT and BATTERY
### 42 U.S.C. § 1983
### (Against Officers Lostumbo,  Greenwood, Does 1-10)
### As to John Tomlinson

44. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

45. Plaintiff John Tomlinson alleges that Defendants, Deputy Lostumbo and Deputy Greenwood assaulted and battered him. "[T]he test for whether a plaintiff can maintain . . . a cause of action against law enforcement officials [for assault and battery] is whether the force used was 'reasonable,' the exact same test as the one used to analyze a Fourth Amendment excessive force claim."[7] Defendants Lostumbo and Greenwood used unreasonable force against Mr. Tomlinson. The undisputed facts are that Defendants Lostumbo and Greenwood assaulted and battered Mr. Tomlinson, causing him permanent damages as hereinabove alleged. Defendants' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of Mr. and Mrs. Tomlinson. Defendants' conduct warrants punitive damages to protect the public in an amount according to proof.

46. As a direct and proximate result of the actions, Mr. Tomlinson has suffered [set out physical injuries] as well as mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

47. As he the acts and/or omissions of Deputies Lostumbo, Greenwood and Does 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Mr. Tomlinson's safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof

---

[7] *Hogan v. Franco,* 896 F. Supp. 1313, 1315 n.2 (N.D.N.Y. 1995).

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### FALSE ARREST
### 42 U.S.C. § 1983
### (Against Officers Lostumbo and Greenwood)
### As to John Tomlinson

48. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

49. Mr. Tomlinson alleges that Defendants Lostumbo and Greenwood violated his Fourth Amendment rights by subjecting him to "an unreasonable search and seizure of his person" and the "loss of his physical liberty." The elements of a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law.[8] "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged."[9]

50. The evidence proves by the requisite preponderance standard that Deputies Lostumbo, Greenwood, and Does 1-10 effectuated an arrest of Mr. Tomlinson without probable  by confining him at the Onondaga County Amphitheater, at the hospital, for multiple appearances in the Geddes Town Court and at all times until release. Mr. Tomlinson was at all time conscious of his unprivileged and humiliating confinement to which he did not consent. Defendants are liable for Mr. Tomlinson's damages.

## Qualified Immunity No Defense

51. Defendants might argue that even if the court finds that Defendant Deputy Lostumbo and Deputy Greenwood used excessive force, he is entitled to qualified immunity. The qualified

---

[8]  *Kraft v. VILLAGE of New York*, 696 F. Supp. 2d 403, (S.D.N.Y. 2010).
[9]  *Savino v. VILLAGE of New York*, 331 F.3d 63, 75 (2d Cir.2003) Where an officer has probable cause to arrest a plaintiff, the confinement is privileged. Id. at 76. The burden of showing that there was probable cause for the arrest is on the officer. Id.

immunity inquiry generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."[10]

52. In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in the Second Circuit consider three factors: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional laws of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.[11] In the excessive force context "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force was objectively reasonable in light of the circumstances."[12] In excessive force cases, then, the analysis "converge[s] on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful."[13]

53. In the particular circumstances faced by the officers as shown by the evidence, a reasonable officer would believe that no force at all needed to be employed and that any force against an innocent man, not a suspect in any crime would be unlawful. Deputies Lostumbo and Greenwood were not presented with any facts, events or circumstances to lead them to reasonably believe that beating a citizen, and who was at all times abiding by all laws, was a lawful use of force. As sworn police Officers to uphold the laws of the United States of America, Deputies Lostumbo, Greenwood, and Does 1-10 are presumed to know the limits of lawful force under the Fourth Amendment of the Constitution. These Deputies and Does 1-10 willfully, knowingly and with a conscious disregard of Mr. Tomlinson's health, safety, and rights violated Mr. Tomlinson's Fourth Amended Rights against unreasonable seizures.

---

[10] *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) accord, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007)

[11] Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991) cert. denied, 503 U.S. 962 (1992).

[12] Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995).

[13] Cowan v. Breen, 352 F.3d 756, 764 n.7 (2d Cir. 2003)

They committed a false arrest upon Mr. Tomlinson, and willfully filed false reports and depositions to cover up their illegal excessive force. Plaintiff's constitutional excessive force claim, and assault and battery claims are not subject to the defense of qualified immunity. Defendant Deputies and Does are therefore not entitled to qualified immunity.[14]

54. As a direct and proximate result of the actions, Mr. Tomlinson has suffered brain damage, severe cervical sprain, whiplash, bruised and bloody wrists, broken ribs, concussion syndrome, as well as mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

55. As he the acts and/or omissions of Deputies Lostumbo, Greenwood and Does 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Mr. Tomlinson's safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### FALSE IMPRISONMENT
### 42 U.S.C. § 1983
### (Against Officers Lostumbo, Greenwood, Does 1-10)
### As to John Tomlinson

56. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

57. Mr. Tomlinson alleges that Defendant Deputies violated his Fourth Amendment rights by subjecting him to "seizure of her person" and the "loss of his physical liberty" by ordering him, under the color of law, to "shut your fucking mouth," being beaten, handcuffed, interrogated, and humiliated in front of his family and the public. Mr. Tomlinson at all times was at liberty to offer his younger and more inexperienced fellow law enforcement officer a word of caution concerning the welfare and safety of a fellow American Citizen. Deputy

---

[14] *Jones*, 465 F.3d at 63.

Lostumbo violently reacted to Mr. Tomlinson's offer of advice to his fellow law enforcement officers by screaming out the unlawful order for Mr. Tomlinson to "shut your fucking mouth!"

58.  The elements of a Fourth Amendment false imprisonment claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law.[15] "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged."[16]

59. The evidence proves by the requisite preponderance standard that Deputies Lostumbo and Greenwood created a "loss of his physical liberty" for Mr. Tomlinson by ordering him, under the color of law, to "shut your fucking mouth, being beaten, handcuffed, interrogated, and humiliated in front of his family and the public. Mr. Tomlinson was at all times conscious of this unprivileged and humiliating confinement to which he did not consent.

60. As a direct and proximate result of the actions, Mr. Tomlinson has suffered [set out physical injuries] as well as mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

61. As he the acts and/or omissions of Deputies Lostumbo, Greenwood and Does 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Mr. Tomlinson's safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

---

[15] *Kraft v. VILLAGE of New York*, 696 F. Supp. 2d 403, (S.D.N.Y. 2010).
[16] *Savino v. VILLAGE of New York*, 331 F.3d 63, 75 (2d Cir.2003) Where an officer has probable cause to arrest a plaintiff, the confinement is privileged. Id. at 76. The burden of showing that there was probable cause for the arrest is on the officer. Id.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS**
**FIRST AMENDMENT RETALIATION**
**42 U.S.C. § 1983**
**(Against Officers Lostumbo, Greenwood, Does 1-10)**
**As to John Tomlinson**

62. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

63. The First Amendment of the United States Constitution protects a significant amount of verbal criticism and challenge directed at police officers.

64. Mr. Tomlinson alleges that Defendant Deputies Lostumbo and Greenwood retaliated against him for voicing his concerns as to the well-being of an arrestee that resulted in the adverse actions of incurring excessive force and subjugation to an arrest unfounded by any probable cause. Defendant Deputies Lostumbo, Greenwood and Does 1-10's motivation for taking such adverse actions was solely Mr. Tomlinson's exercise of his right to voice verbal criticism and/or otherwise spoken directives to law enforcement officers.

65. As a direct and proximate result of the actions, Mr. Tomlinson has suffered brain damage, severe cervical sprain, whiplash, bruised and bloody wrists, broken ribs, concussion syndrome, as well as mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

66. As he the acts and/or omissions of Deputies Lostumbo, Greenwood and Does 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Mr. Tomlinson's safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS
**Fabrication of Evidence**
**42 U.S.C. § 1983**
**Fourteenth Amendment**
**(Against Officers Lostumbo, Greenwood, Does 1-10)**
**As to John Tomlinson**

67. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

68. Deputies Lostumbo, Greenwood and Does 1-10, while acting under color of law, deprived Mr. Tomlinson of his civil rights by providing false and fabricated evidence in arrest and police reports that resulted in depriving Mr. Tomlinson's liberty and led the County District Attorney to file criminal charges against Mr. Tomlinson.

69. Each of the Deputies Lostumbo, Greenwood and Does 1-15 knew or should have known that their fabricated evidence and statements were false, and each Deputies' conduct was done with deliberate indifference to and/or reckless disregard of Mr. Tomlinson's rights and/or for the truth.

70. Deputies Lostumbo, Greenwood, and Does 1-10 drafted and affirmed such preposterous allegations as that "the defendant was yelling at me as he approached me, and did get so close that I needed to grab onto his shirt to prevent him from coming any closer and to protect myself. Furthermore, the defendant did put his hands towards my face in what appeared to be an attempt at him punching me. The defendant did appear to be highly intoxicated during this incident."

71. Deputies Lostumbo, Greenwood and Does 1-10 fabrication of false evidence and testimony firmly violated Mr. Tomlinson's rights under the due process clause of the Fifth and Fourteenth Amendments, both procedural and substantive.

72. As a direct and proximate result of the actions, Mr. Tomlinson has suffered brain damage, severe cervical sprain, whiplash, bruised and bloody wrists, broken ribs, concussion syndrome, as well as mental and emotional distress, anxiety, humiliation, fear, discomfort,

loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

73. As the acts and/or omissions of Deputies Lostumbo, Greenwood and Does 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Mr. Tomlinson's safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof

## EIGHTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS
**Failure to Intercede**
**42 U.S.C. § 1983**
**Fourth and Fourteenth Amendment**
**(Against Officers Lostumbo, Greenwood, Does 1-10)**
**As to John Tomlinson**

74. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

75. By their conduct and under color of state law, Deputies Lostumbo, Greenwood, and Does 1-10 had opportunities to intercede on behalf of Mr. Tomlinson to prevent his assault, battery, false imprisonment, excessive force, and retaliation which were in patent violation of his Fourth Amendment rights, as well as false arrest that deprived him of his liberty rights under the Fourteenth Amendment. However, on account of said Deputies and Does 1-10's intentional conduct and/or reckless or deliberate indifference, said Deputies and Does declined or refused to do so.

76. No reasonable Sheriff Deputy and/or supervisory staff in or after 2024 would have believed that failing to intercede to prevent Mr. Tomlinson's assault, battery, false imprisonment, excessive force, retaliation was lawful.

77. The conduct of Deputies Lostumbo, Grenwood, and Does 1-10 violated clearly established constitutional rights of which said Defendants knew, or of which reasonable Sheriff Deputies, supervisors, should have known, rendering them liable to Mr. Tomlinson under 42 U.S.C. § 1983 without recourse to qualified immunity.

78. As a direct and proximate result of the actions, Mr. Tomlinson has suffered [set out physical injuries] as well as mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

79. As the acts and/or omissions of Deputies Lostumbo, Greenwood and Does 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Mr. Tomlinson's safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof

## B. NEW YORK STATE LAW CLAMS

### NINTH CAUSE OF ACTION
### FALSE IMPRISONMENT
### (Against Officers Lostumbo, Greenwood, Does 1-10)
### As to John Tomlinson

80. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

81. Plaintiff, John Tomlinson alleges that Defendants Lostumbo, Greenwood and Does 1-10 falsely imprisoned him  by subjecting him to "an unreasonable search and seizure of his person" and the "loss of his physical liberty."

82. The evidence proves by the requisite preponderance standard that Deputies Lostumbo, Greenwood and Does 1-10 engaged in the false imprisonment of Mr. Tomlinson by confining him at the Onondaga County Amphitheater and at the hospital, and at all times until release. Mr. Tomlinson was at all times conscious of his unprivileged and humiliating confinement to which he did not consent.

83. As a direct and proximate result of the actions, Mr. Tomlinson has suffered brain damage, severe cervical sprain, whiplash, bruised and bloody wrists, broken ribs, concussion syndrome, as well as mental and emotional distress, anxiety, humiliation, fear, discomfort,

loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

84. As the acts and/or omissions of Deputies Lostumbo, Greenwood and Does 1-10 were intentional, malicious, oppressive and/or done with a conscious or callous disregard for Mr. Tomlinson's safety and/or constitutional rights which thereby justifies an award of punitive or exemplary damages in amounts to be determined according to proof

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### TENTH CAUSE OF ACTION
**Negligent Infliction Of Emotional Distress**
**(Against Officers Lostumbo, Greenwood, Does 1-10)**
**As to Joanna Tomlinson**

85. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

86. In New York, the general rule is that bystanders are not owed a duty and cannot assert such a claim; however, New York recognizes an exception to this principle: the "zone of danger"[17] rule. The exception is premised on the concept that the defendant breached a duty owed to the plaintiff. Where a defendant's [negligent conduct creates] an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence, the plaintiff may recover damages for such injuries.

87. Mrs. Tomlinson accompanied her husband at the Onondaga County Amphitheater when Deputy Lostumbo ordered him to "shut your fucking mouth." Standing by her husband's

---

[17] The zone of danger rule was first recognized by the New York Court of Appeals in *Bovsun v. Sanperi*, 61 N.Y.2d 219. In that case, the plaintiff was inspecting the rear of his family's vehicle when another vehicle crashed into the car, pinning him between the two vehicles and causing serious injuries. The court ruled that plaintiff's wife and daughter, who were in the vehicle at the time, were within the zone of danger, even though they did not actually see the collision, as they were "subjected to an unreasonable risk of bodily injury" by defendant's negligent conduct, were instantly aware of the impact, feared for their immediate family member's safety and immediately observed his serious injuries.

side, she saw Deputy Lostumbo punch her husband in the face, grab her husband and tackle him to the ground. She watched Deputies Lostumbo and Greenwood beat him and place him under arrest, Mrs. Tomlinson demanded that Deputies Lostumbo and Greenwood "He's law enforcement, he's law enforcement, what the hell are you doing, he's law enforcement." After speaking out in defense of her husband and witnessing what her husband had just incurred, Mrs. Tomlinson felt a well-founded fear that she too would be subjected to a beating and arrest. Seeing her husband being beaten with bloodied face, Mrs. Tomlinson felt powerless to stop the violent assault upon both fear for her own safety and the shock that seized upon observing what was occurring to her husband.

88. As a direct and proximate result of the actions, Mrs. Tomlinson has suffered mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

  WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION
**Intentional Infliction Of Emotional Distress**
**(Against Officers Lostumbo, Greenwood, Does 1-10)**
**As to John Tomlinson & Joanna Tomlinson**

89. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

90. Under New York law, "To prevail on a cause of action for intentional infliction of emotional distress, a plaintiff must prove four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard for the substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."[18]

91. Defendant Deputies Lostumbo, Greenwood, and Does 1-10 inflicted objectively excessive and unreasonable force upon Mr. Tomlinson, including bloodying his face, head, and

---

[18] *Marmelstein v. Kehillat New Hempstead, 45 A.D.3d 33, 841 N.Y.S.2d 493, 499 (2007).*

causing injuries to his neck, head and ribs. Defendant Deputies Lostumbo, Greenwood, and Does 1-10 engaged in extreme and outrageous conduct that should not be tolerated in a civilized society, to wit: law enforcement unhesitatingly subjecting a civilian to a merciless beating in retaliation for expressing his or her concern over a third party's physical health and well-being,

92. As a direct and proximate result of the actions, Mrs. Tomlinson has suffered mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery.

   WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### TWELFTH CAUSE OF ACTION
**Negligent Training, Hiring, Retention, Discipline
and Supervision
(Against Onondaga County and Onondaga
County Sheriff's Office)
As to John Tomlinson**

93. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

94. Defendants Onondaga County and Onondaga County Sheriff's Office maintains a custom, policy and pattern and practice of negligently failing to exercise reasonable care in training, supervising and hiring its deputies.

95. Defendants Onondaga County and Onondaga County Sheriff's Office has a duty to conduct training, hiring, retention, and supervision of its deputies so these agents and employees will protect and serve, rather than break the very laws, including the United States Constitution, they are sworn to uphold. Defendants Onondaga County and Onondaga County Sheriff's Office breached, and still breaches, this legally imposed duty by allowing its deputies to engage in lawless behavior and conduct, including terrorizing the citizens of the County.

96. Plaintiffs further allege that the Onondaga County and Onondaga County Sheriff's Office maintains a custom, policy, pattern and practice of inaction regarding the disciplining of deputies for excessive force; and a custom, policy, practice and pattern of failing to

discipline its deputies for violating the constitutional rights of its citizens. Plaintiffs also allege that the Onondaga County Sheriff's Office has an inadequate Use of Force Policy, which does not clearly draw a bright line defining constitutional violations for excessive force. Onondaga County and Onondaga County Sheriff's Office policy, custom, practice and pattern were a motivating factor in causing a deprivation of Mr. Tomlinson's constitutional rights and causing all of his injuries, damages and harms.

   WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## THIRTEENTH CAUSE OF ACTION
### Loss Of Consortium
### (Against All Defendants)
### As to Joanna Tomlinson

97. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

## Joanna Tomlinson's Loss of Consortium Claim

98. Joanna Tomlinson has been married to John Tomlinson for 33 years. Under New York Law, Mrs. Tomlinson makes her claim for the loss of Mr. Tomlinson's "services", including household services such as cooking, cleaning, lawn work as well as loss of love, companionship, affection and sexual relations, disposition and temperament, mental and emotional distress, anxiety, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery . Mr. Tomlinson suffers post-concussive syndrome, including headaches, memory loss, anxiety, fear, insomnia, and severe mental and emotional distress, all of which divert and steal his attention from Mrs. Tomlinson. Mrs. Tomlinson has sustained a great loss. Her husband is not the person he has been for the previous 33 years due to his daily and continuing suffering from injuries he incurred at the hands of Defendants, and each of them.

   WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

1.    For special and economic damages, including lost wages, for all Claims

2.    For general and non-economic damages for all Causes of Action;

3.    For $3,000,000.00 against DEFENDANTS Lostumbo, Greenwood, and Does 1-10, individually and severally for brain damage, pain, bleeding, swelling, misery, suffering, loss of enjoyment of life, for loss of ability to pursuit happiness, for severe mental and emotional distress, anxiety, humiliation and other non-economic and economic damages.

4.    For punitive damages for $3,000,000.00 for all Claims against only Defendants Lostumbo, Greenwood, and Does 1-10, in their individual capacity for the protection of the public;

5.    For pre-judgment and post-judgment interest at the prevailing legal rate;

6.    For costs of the suit including reasonable attorney's fees;

7.    An order declaring that Deputies Lostumbo, Greenwood, and Does 1-10 filed false police reports, committing Class A misdemeanors.

8.    An order declaring that the Onondaga County Sheriff's Office Use of Force Policy is inadequate to protect the constitutional rights of individuals and citizens who come in contact with the Sheriff's Deputies.

9.    An order declaring that such strikes and slams of Mr. Tomlinson in his face and against the pavement, while he was offering his fellow law enforcement officer advice on how to protect the constitutional rights of a United States Citizen was per se excessive force.

10.   For such other and further relief, including injunctive relief, as the Court may deem proper.

**March 13, 2025**

**RYDER LAW FIRM**

<u>/s/ Jesse P. Ryder</u>

Jesse P. Ryder, Esq.
Attorney for John and Joanna Tomlinson

**RYDER LAW FIRM**
Jesse P. Ryder, Esq.
6739 Myers Road
East Syracuse, NY 13057
Tel: (315) 382-3617
Fax: (315) 295-2502
Ryderlawfirm@gmail.com

ATTORNEY FOR PLAINTIFFS